IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| MLB ENTERPRISES, CORP., <br> 1160 E. Jericho Turnpike <br> Suite 117 <br> Huntington, NY 11743, <br><br> Plaintiff, <br><br> V. <br><br> NEW YORK STATE DEPARTMENT OF TAXATION AND FINANCE and the COMMISSIONER of the New York State Department of Taxation and Finance, <br> Building 9 <br> W.A. Harriman Campus <br> Albany, NY 12227 <br><br> Defendant. | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : | Case No. _____ <br> Judge _____ <br><br><br> **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

Comes now Plaintiff, MLB Enterprises, Corp., a New York corporation, who for its Complaint against Defendants New York State Department of Taxation and Finance and its Commissioner states as follows:

**INTRODUCTION**

1. Plaintiff MLB Enterprises Corp. files this lawsuit to challenge and enjoin the assessment of over $4.2 million in sales tax by the New York State Department of Taxation. The disputed tax assessments arise from the transaction of a fictitious currency, known as "scrip," which is used in MLB's nightclub by patrons to provide tips to exotic entertainers. MLB does not process, possess, or record scrip transactions on its corporate books. To the contrary, MLB contracts with a wholly separate corporation, Metro Enterprises, Corp., which makes scrip available through point-of-sale machines in MLB's club. Because it can only be used to offer

1

gratuities and for no other purpose in or outside of the club, scrip is lawfully the property of the entertainers to whom it is provided. Nevertheless, the Tax Department argues that MLB must collect and remit sales tax on scrip tips given to its employees, placing MLB in the unenviable position of violating one law to comply with another. As set forth in this complaint, this quandary violates MLB's due process rights under both the United States and New York Constitutions. Furthermore, because MLB acknowledges that the tips paid by patrons to its employees constitute gratuities owned solely by the entertainers, MLB cannot be subject to sales tax. MLB is therefore entitled to declaratory judgment and injunctive relief prohibiting the New York State Department of Taxation and Finance from collecting or attempting to collect sales tax from it.

2. MLB lacks a procedure for judicial review of the assessments in New York state court, removing this case from the coverage of the Tax Injunction Act. In New York, a taxpayer may administratively appeal a faulty tax assessment to the tax appeals tribunal and may then obtain judicial review of the tribunal's decision by initiating an Article 78 administrative appeal in state court. *See* NY Tax Law § 2016. As a condition precedent to filing an Article 78 appeal, corporate taxpayers like MLB must post as a bond the entire amount of the assessed tax. *See* Tax Law § 288(5). But MLB lacks the financial resources to post a bond in excess of $4.2 million. MLB's sole opportunity for judicial review of the Tax Department's faulty tax assessment is before this Court.

## **JURISDICTION**

3. This is a lawsuit authorized by law to redress deprivations, under color of state law, of rights, privileges and immunities secured by the Fourteenth Amendment to the United States Constitution. Jurisdiction is conferred on this Court by 28 U.S.C. § 1331; 28 U.S.C. § 1343; 28 U.S.C. § § 2201 and 2202; and by 42 U.S.C. § 1983.

4. Plaintiff also states causes of action under the Constitution and laws of the State of New York. These claims are inherently related to the other claims in this case, over which this Court has original jurisdiction, that they are a part of the same case or controversy under Article III of the United States Constitution. Accordingly, this Court has supplemental jurisdiction of these claims under 28 U.S.C. § 1367.

5. Venue is appropriate in the Southern District of New York because the acts described in this Complaint have all occurred within the district.

## PARTIES

6. Plaintiff MLB Enterprises, Corp. (hereinafter "MLB") is a corporation duly organized under the laws of the State of New York. At all times relevant to this Complaint, MLB owned and operated a gentleman's club, known as Lace, located in the Times Square area at 725 7th Ave. in New York City.

7. Defendant New York State Department of Taxation and Finance (hereinafter "the Tax Department") is an agency of the State of New York responsible for the administration of the Tax Law, including the assessment and collection of New York State sales and use taxes. Its principal office is located at Building 9, W.A. Harriman Campus, Albany, NY 12227.

8. Defendant Commissioner of the New York State Department of Taxation and Finance is the individual with sole charge of the administration of the Tax Department pursuant to Tax Law § 170(1). The Commissioner is a "state officer sued solely in an official capacity." The Commissioner's principal office is located at Building 9, Room 205, W.A. Harriman Campus, Albany, New York 12227.

**STATEMENT OF FACTS**

9. MLB has in the relevant past operated a gentlemen's club in the Times Square area of New York City known as Lace.

10. Lace ceased operations in 2018. Prior to that date, Lace operated consistently at its Times Square location for well over a decade.

11. When it was in business, Lace offered live exotic dance performances to the consenting adult public, as well as alcoholic and nonalcoholic liquid refreshment. Lace's first floor contained a nightclub and bar area, as well as a lobby with coat check, and Lace's second floor contained a sports club with televisions that broadcasted live sports.

12. The live dance performances at Lace occurred both on an open stage in the nightclub, as well as on occasion in separate smaller party rooms available for rent from MLB by patrons.

13. Customers who rented party rooms were not required to view dance entertainment in the rooms and were not required to tip entertainers if they did perform in the party rooms.

14. Customers rented party rooms by paying a set fee to MLB. This did not include any fee for food or beverages consumed in the party rooms. MLB also did not collect sales tax on room rentals from customers.

15. MLB did not provide a stage, lighting, props, or any form of live entertainment in party rooms.

16. MLB also offered a variety of alcoholic and non-alcoholic beverages for purchase in the main area of the club. However, MLB did not sell food or beverages in conjunction with party room rentals.

17. MLB employed entertainers to perform live exotic dances in both the main stage area of the club, as well as in party rooms at the customer's request.

18. Patrons at Lace could use cash to purchase beverages in the main area of the club and to pay for party room rental fees.

19. Patrons could also tip entertainers in cash.

20. However, because patrons often spent an entire evening at the club, they would at times desire to spend more money than they could access from ATM machines. (Banks typically set a daily withdrawal limit of $400 or less.)

21. As a service to its patrons, MLB contracted with an outside company with wholly different ownership, Metro Enterprises Corp., to allow patrons to convert charges on their credit cards, which have no daily spending limits outside the customer's individual credit limit, into an alternate internal currency known as "scrip."

22. Patrons could then use scrip to tip entertainers for their services, including for performances that occurred in party rooms and for performances that occurred in the open stage area.

23. MLB maintained contracts with the entertainers in which the entertainers agreed to accept scrip from patrons and in which the parties agreed that the entertainers were entitled to retain all gratuities paid to them by patrons of the club.

24. Patrons could only provide scrip to entertainers; they could not use this alternate currency to purchase beverages or rent party rooms from the club. Patrons were not required to use scrip in the club, and once they obtained scrip, they were free not to spend it.

25. Entertainers could then receive tips from patrons in either scrip or cash. No notice was posted anywhere in the club or on the scrip receipts indicating that scrip offered to entertainers by customers was not a gratuity.

26. In order to receive entertainment in a party room, a patron would pay a room rental fee by credit card to MLB and would separately tip the entertainer(s) who performed in scrip or cash, at the customer's discretion.

27. MLB recorded room rental charges in its gross receipts and remitted sales tax on the room rental charges to the Tax Department, but it did not separately collect sales tax from customers. Rather, the sales tax was subsumed in the flat rate customers paid to rent a party room.

28. MLB did not charge sales tax to the customer for room rentals, but rather remitted sales tax from its own receipts.

29. Upon information and belief, Metro would charge customers a 20% service fee to convert their credit cards into scrip.

30. Upon information and belief, Metro would also charge entertainers a 10% service fee when they exchanged scrip for cash after receiving a tip.

31. Also upon information and belief, Metro never included the scrip transactions with patrons and entertainers in its gross receipts and always treated the scrip proceeds as gratuities belonging to the entertainers.

32. Similar to Metro, MLB never collected the scrip proceeds from either Metro or the entertainers and never included scrip transactions in its gross receipts.

33. In addition, MLB never collected tips provided to entertainers in cash and never recorded the entertainers' cash tips in its payroll or accounting records.

34. Moreover, the Tax Department previously advised MLB and Metro's predecessor-in interest, that they were not required to collect and submit sales tax related to scrip transactions.

35. In other words, because MLB does not itself pay sales tax, but rather collects and remits sales tax on behalf of the government, the Tax Department in essence put MLB on notice that it was not required to collect sales tax on its behalf for scrip gratuities to entertainers.

36. In fact, in a lawsuit pending in New York state court between Metro and the Tax Department, the Tax Department conceded that gratuities are not sales-taxable.

37. Nevertheless, the Department of Taxation and Finance has now issued a number of sales tax assessments against MLB which together total over $4.2 million. These assessments include, but are not limited to, the following:

   a) Assessment No. L-045789856-1, issued in the amount of $4,273,843.01 to MLB. Based upon representations from the Tax Department, this assessment was based solely upon scrip transactions processed by Metro at Lace, none of which were recorded on MLB's books or otherwise included in MLB's gross receipts;

   b) Assessment No. L-045790014-7, issued in the amount of $86,000.00 to MLB. Based upon representations from the Tax Department, this assessment was based upon underreported sales, including sales related to room rental charges at Lace; and

38. Upon information and belief, the Department of Taxation and Finance believes that Metro and MLB are a single taxpayer for purposes of the sales tax on scrip transactions, even though they have no common ownership, principles, or parent corporations.

39. Also upon information and belief, the Department of Taxation and Finance believes the full amount of scrip transacted in the club is subject to sales tax on the basis that it constitutes an amusement charge under Tax Law § 1101(d)(2) and (3).

40. MLB is presently appealing the tax assessments against it through the administrative tax appeal process. Thus far, the result of the administrative process has been in the Tax Department's favor and against MLB. MLB desires to contest the legality and constitutionality of the tax assessments against it. However, MLB lacks the ability to post the full amount of the tax in order to pursue at Article 78 proceeding in the New York courts.

## STATEMENT OF CLAIMS

### Count One:
### 42 USC 1983 Violation of Fourteenth Amendment
### Due Process Rights

41. Plaintiff realleges each of the foregoing statements as if repeated here.

42. New York Labor Law Article 6 § 196-d prohibits an employer or its agents or officers from demanding, accepting, or retaining "any part of a gratuity or of any charge purported to be a gratuity for an employee." Department of Labor regulations promulgated under the Fair Labor Standards Act also indicate that gratuities provided to service employees are the employees' sole property. *See* 29 CFR § 531.52.

43. The entertainers who perform in Lace constitute employees of MLB, and the provisions of New York Labor Law Article 6 § 196-d and the FLSA apply to MLB.

44. Scrip provided by patrons to entertainers constitutes a gratuity and is therefore the property of the entertainers.

45. By requiring MLB to withhold and pay a portion of scrip paid by patrons to entertainers as sales tax, and by applying Tax Law §§ 1101(a)(3), 1101(d)(2) and (3), and 1105 to MLB, the Department of Taxation and Finance is compelling MLB to violate New York Labor Law Article 6 § 196-d and the FLSA.

46. In addition, the Tax Department induced MLB to avoid collecting and remitting sales tax on scrip transactions by previously advising that scrip transactions were not subject to sales tax.

47. The Department of Taxation and Finance is violating MLB's right to substantive and procedural due process, protected by the Fourteenth Amendment due process clause, by requiring it to violate one law in order to comply with another.

48. MLB is therefore entitled to a declaration of unconstitutionality, as well as fees and costs pursuant to 42 U.S.C. 1988. MLB is further entitled to preliminary and permanent injunctive relief prohibiting the Department of Taxation and Finance from applying the provisions of Tax Law §§ 1101(a)(3), 1101(d)(2) and (3), and 1105 to scrip transactions.

## Count Two:
## Declaratory Judgment

49. Plaintiff realleges each of the foregoing statements as if repeated here.

50. Under CPLR 3001, there exists a justiciable controversy between MLB and the Department of Taxation and Finance concerning the propriety and legality of the sales tax assessment.

51. MLB lacks a plain, speedy, and efficient remedy to obtain judicial review of the tax assessments against it in New York state court.

52. MLB lacks the finances necessary to proceed with an Article 78 appeal, and more specifically lack the financial resources to post a bond in the amount of the assessed tax, making the administrative process in essence futile.

53. Under New York Tax Law, sales tax is imposed on the "receipts" from every retail sale of tangible personal property, unless an exemption applies, and upon specifically enumerated services. Tax Law § 1105; 20 NYCRR 525.2(a)(1)(i).

9

54. The term "receipt" is defined for these purposes as the taxable sale price of any property or service. Tax Law § 1101(a)(3); 20 NYCRR 526.5(a). Therefore, "receipts" for sales tax purposes include only those sales that are subject to sales tax.

55. Tax Law § 1131(1) imposes a duty to collect and remit sales tax on "every vendor of tangible personal property or services."

56. With respect to sales tax, the term "vendor" is defined, in relevant part, under Tax Law § 1101(b)(8)(A) as a person "making sales of tangible personal property or services, the receipts from which are taxed by [Article 28 of the Tax Law]." Thus, the duty to collect and remit sales tax is imposed only upon a person making taxable sales of tangible personal property or taxable services.

57. Amusement charges are also subject to sales tax under Tax Law § 1105(f)(1). An "amusement charge" is "an admission charge, dues, or charge of roof garden, cabaret, or other similar place." Tax Law § 1101(d)(3).

58. An "admission charge" is further defined as "the amount paid for admission, including any service charge and any charge for entertainment or amusement or for use of the facilities." Tax Law § 1101(d)(2).

59. Only recipients of amusement charges are required to collect and pay sales tax. Tax Law § 1131(1).

60. Each of the foregoing Tax Law provisions is wholly inapplicable to MLB with respect to the use of scrip to provide gratuities to entertainers and with respect to the rental of party rooms.

61.    First, MLB does not engage in a taxable sale with respect to scrip. Because scrip can solely be used by patrons to tip entertainers, MLB does not sell tangible property or services with respect to scrip as required by Tax Law § 1101(a)(3).

62.    Second, because MLB does not engage in taxable sales using scrip, it is not a vendor subject to the tax collection requirement contained in Tax Law § 1101(b)(8)(A).

63.    Third, because scrip could not be used to purchase beverages or rent party rooms, scrip paid by patrons to entertainers did not constitute an "amusement charge" or "admission charge" under Tax Law § 1101(d)(2) and (d)(3).

64.    Moreover, because, by contract and under New York Labor Law, the scrip gratuities paid to the entertainers constitute the entertainers' property and are not recorded in MLB's gross receipts, MLB is not a recipient of an amusement charge and is therefore not required to collect and pay tax. Tax Law § 1131(1).

65.    Fourth, as construed by the New York courts, party room rental charges do not constitute taxable admission charges under Tax Law § 1101(d)(2) and (d)(3).

66.    MLB is therefore entitled to an order declaring that the Department of Taxation and Finance lacks authority to hold it liable for sales tax arising from the conversion of credit to scrip by Metro or tips paid by patrons to entertainers using scrip.

67.    MLB is also entitled to an order declaring that the Department of Taxation and Finance lacks authority to hold it liable for sales tax arising from the rental of party rooms and to a credit against any sales tax owed for previously-remitted sales taxes paid by MLB for room rental charges.

68.    Under Article 86 of the CPLR, MLB is also entitled to recover the fees and expenses associated with this action, because MLB is a corporation with less than 100 employees as of the

date of the filing of this action and the Department of Taxation and Finance's position with regard to sales tax is not substantially justified.

### Claim Three:
### Violation of State Constitutional Rights

69. Plaintiff realleges each of the foregoing statements as if repeated here.

70. MLB pleads each of the allegations contained in Count One above under Article I, Section 6 of the New York Constitution.

71. MLB is entitled to a declaration of unconstitutionality under Article I, Section 6 of the New York Constitution, as well as preliminary and permanent injunctive relief prohibiting the enforcement of Tax Law §§ 1101(a)(3), 1101(d)(2) and (3), and 1105 to scrip transactions.

### **DEMAND FOR RELIEF**

WHEREFORE, Plaintiff MLB Enterprises Corp. demands judgment as follows:

1. That the New York State Department of Taxation and Finance and its Commissioner be restrained by injunction from commencing or prosecuting any action against MLB with respect to any funds which may be determined to constitute tips belonging to MLB's employees under Article 6 of the New York Labor Law or the Fair Labor Standards Act;

2. That the Court issue a declaratory judgment in favor of MLB and against the Department of Taxation and Finance holding that MLB is not liable for sales tax and/or amusement charge tax on the amount of scrip claimed by patrons, paid to entertainers as gratuities, or processed by Metro Enterprises Corp.; that MLB is not liable for sales tax on party room rental charges; and that Tax Law §§ 1101(a)(3), 1101(d)(2) and (3), and 1105 are wholly inapplicable to MLB;

3. That the Court issue a declaratory judgment in favor of MLB and against the Department of Taxation and Finance holding that the Department's efforts to impose sales tax against MLB for funds which the New York Labor Law designates as employee property violates

MLB's due process rights under the United States Constitution and the Constitution of the State of New York;

4. That the Court preliminarily and permanently enjoin the Department of Taxation and Finance and its Commissioner from applying the provisions of Tax Law §§ 1101(a)(3), 1101(d)(2) and (3), and 1105 to scrip transactions and party room rental charges;

5. An award of attorney fees and costs against the New York State Department of Taxation and Finance and its Commissioner pursuant to 42 U.S.C. 1988; and

6. Any such relief in law or equity as the Court may deem just, proper, and equitable.

Respectfully submitted,

/s/ Daniel Silver
DANIEL A. SILVER
Silver & Silver LLP
One Liberty Square
New Britain, Connecticut 06051
(860) 225-3518
dan@lawsilver.com

JENNIFER M. KINSLEY
(Admission *pro hac vice* pending)
Kinsley Law Office
Post Office Box 19478
Cincinnati, Ohio 45219
(513) 708-2595
kinsleylawoffice@gmail.com

Counsel for Plaintiff MLB Enterprises Corp.